UNITED STATES of America
v.
James Weldon LEWELLYNG.
No. Cr. 10355.

United States District Court
N. D. Texas,
Fort Worth Division.

Dec. 30, 1963.

Clyde M. Marshall, Jr., Wade, Davis, Calloway & Marshall, Fort Worth, Tex., appointed by the Court, and Myron M. Sheinfeld, Houston, Tex., on appeal, for Lewellyng.

BREWSTER, District Judge.

The defendant in this case was convicted and sentenced in August, 1962 by this Court for a violation of the Dyer Act.

The defendant appealed from his conviction; and after submission of the case on appeal, the Court of Appeals remand-

ed the case to this Court, 5 Cir., 320 F.2d 104, under the following order:

> "It is now here ordered and adjudged by this Court that the order of the said District Court denying the defendant's motion for new trial in this cause be, and the same is hereby, reversed; and that this cause be, and it is hereby, remanded to the said District Court for the granting nunc pro tunc of the defendant's motion for psychiatric examination, and for reconsideration by the District Court after such examination and any hearing thereon of the defendant's motion for new trial."

On September 16, 1963, the defendant was received at the U. S. Public Service Hospital at Fort Worth under order of this Court requiring a psychiatric examination as to his mental condition by at least one qualified psychiatrist, pursuant to the provisions of Title 18, Section 4244, U.S.Code. The examination of the defendant was delayed in the early stages by certain conduct on the part of the defendant with which Judges Rives, Cameron and Hays are familiar. An extensive examination of the defendant was made by Dr. Wilson, Chief of the Board of Psychiatrists at such Hospital, with the assistance of other members of the staff, including psychiatrists, physicians and a psychologist. The qualifications of the psychiatrists more than satisfied the legal requirements. On December 17, 1963, the Court was advised by the Medical Chief of Staff of such Hospital that the examination had been completed and that the Board of Psychiatrists would forward its report. Experienced counsel was appointed to represent the defendant and a hearing was held on December 30, 1963. At the hearing, with the defendant and his court appointed counsel present, the Court heard evidence on the issue of the defendant's mental condition covering all times possibly material to this case. The evidence included the detailed testimony of Dr. Wilson based on his examination of the defendant, including thirty interviews averaging at

least an hour. The members of the Board of Psychiatrists at the Hospital unanimously agreed with Dr. Wilson's conclusions, which were adverse to the defendant, and which are reflected in the findings of this Court set out in this memorandum.

All of the evidence offered on the hearing shows that the defendant had never been psychotic or mentally defective. The Court finds that at all times material hereto—that is, continuously from a period prior to the commission of the offense down to the present time—the defendant has had sufficient mental capacity to be legally responsible for his acts, to understand and appreciate the proceedings against him, and properly to assist in his own defense, and that specifically such mental capacity existed at the time of all hearings before this Court held in connection with this case, which include the trial on its merits, the hearings preliminary to the trial, the sentence hearing, the original hearing on the motion for new trial, and the present hearing. The Court further finds that this 39 year old defendant had sufficient mental capacity to know and understand what he was doing when he wrote the letter to his 16 year old co-defendant prior to the trial on its merits. The letter was offered in evidence; and the effect of it was that the defendant was going to frame a plea of insanity and wanted her to help him put it over with perjured testimony.

In appraising the evidence, it is important to consider the defendant's theory of insanity as made by him on the trial of the case on its merits. That theory was that he sometimes had "black out spells" which were always brought on by drinking vodka while he had intense headaches. He made no claim of any mental defect or disease that would affect his competency while he appeared to be normal. As a matter of fact, all of the evidence and the facts of the trial on its merits and the related hearings showed conclusively that the defendant's claim of insanity in reality had no application to the crucial times involved;

that is, to the time of the commission of the offense, and to the times of the trial, the preliminary hearings, the sentence hearings and the hearings on the motion for new trial.

The defendant testified in his own behalf on the trial of the case. He admitted that he knew the automobile was stolen when he drove it into Texas. His claim was that he was drinking vodka and had a black out spell when he and his 16 year old female companion stole the automobile in Minneapolis. However, he testified that he was in full possession of his faculties in Oklahoma when she was discussing with him their theft of the car, and that he then drove the car to Texas with knowledge that it was stolen. He did not deny that he sped away and fled when Texas State Highway Patrolmen alighted from their car after stopping him for speeding shortly after he came into Texas. His only reason for so doing was that he knew he was in a stolen car. His confession to an F B I agent soon after his arrest related detailed facts about the theft of the car and the trip to Texas in it, which were corroborated by later investigation. The defendant's own testimony conclusively showed his guilt even if the Court had accepted his claim that he had a black out spell at the time he actually stole the car.

I know from presiding at all of the hearings in this case that the defendant never had any trouble that even slightly resembled a black out spell during any of such hearings. He never made bond after his arrest several weeks before the trial, and there was no claim that he had had vodka or any other alcoholic drink during his confinement in jail. He actively assisted in his own defense by questioning some of the witnesses, by testifying in his own behalf, and by making a portion of the defense argument to the jury. He had a good grasp of the case. His questions to witnesses had purpose. His answers to questions propounded to him while testifying were responsive. His argument to the jury was as good as would be expected of a layman. He made his own plea for reduction of sentence; and, as a result thereof, his sentence was reduced at the original hearing on the motion for new trial. His entire conduct showed a complete understanding of the proceedings against him, and more than usual ability and capacity to assist in his own defense.

The testimony of the psychiatrist who examined the defendant and testified on this hearing supports these observations. He testified that he found nothing in his examination which would support the claim of black out spells.

The Court, upon the evidence heard in the hearing on reconsideration of the motion for new trial in pursuance of the mandate of the Court of Appeals, is of the opinion that such motion should now be and it is now overruled.

The Clerk will transmit to the Court of Appeals a certified copy of these findings and conclusions and of the order dated December 30, 1963, overruling the motion for new trial.